UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
In re:

LAWRENCE B. SALANDER, and                                   **OPINION AND ORDER**
JULIE D. SALANDER,

                                    Debtors.
----------------------------------------------------------------------x
WELLS FARGO BANK, NATIONAL ASSOCIATION,
f/k/a Wachovia Bank N.A.,

                                    Appellant,              13-CV-2356 (CS)
                                                            13-CV-2357 (CS)

             - against -

FIRST REPUBLIC BANK and JULIE D. SALANDER,

                                    Appellees.
----------------------------------------------------------------------x

Appearances:
Andrew B. Helfand
Jacob Ginsburg
Helfand & Helfand
New York, New York
*Counsel for Appellant*

J. Christopher Shore
Julie M. Winters
White & Case LLP
New York, New York
*Counsel for Appellee First Republic Bank*

Seibel, J.

        Before the Court are two related appeals of Wells Fargo Bank, National Association f/k/a

Wachovia Bank, N.A. ("Wells Fargo").  (Nos. 13-CV-2356, 13-CV-2357.)  First, Wells Fargo

appeals from the Bankruptcy Court's May 24, 2012 Consent Order Holding Debtor Julie D.

Salander in Contempt (the "Consent Order").  (WF Mem. ¶ 1.)[1]  Wells Fargo also appeals from

the Bankruptcy Court's June 8, 2012 Memorandum Decision and June 15, 2012 Order

(collectively, the "2012 Memorandum Decision and Order") prohibiting Wells Fargo from

asserting a forgery claim, or any other claims belonging to the Debtors' estate, in state court.

(*Id.*)  For the reasons that follow, the appeal of the Consent Order is DISMISSED and the 2012

Memorandum Decision and Order is AFFIRMED.

## I.  Background

I set forth only the facts relevant to the disposition of these matters below.[2]

### A.  *Mortgages and Bankruptcy Proceedings*

On February 27, 2003, Lawrence Salander and his wife, Julie Salander ("Ms. Salander"

or "Debtor") (collectively, the "Debtors"), executed a note in favor of First Republic Bank

---

[1] "WF Mem." refers to Appellant's Combined Briefs.  (No. 13-CV-2356, Doc. 9; No. 13-CV-2357, Doc. 8.)  In an Order dated April 16, 2013, I gave Appellant permission to file either two 25-page briefs or one, consolidated 50-page brief.  (No. 13-CV-2356, Doc. 8.)  Appellant chose the latter, and thus the briefs filed under both docket numbers are identical.  These briefs may be comprehensible to one fully steeped in the litigation below, but their organization and syntax made them unhelpful to the Court.  I have tried my best to divine from the lengthy and jumbled discussion what Wells Fargo is trying to argue.

[2] Wells Fargo requests that, pursuant to Federal Rule of Evidence 201, I take judicial notice of over 700 pages of material, including various judicial opinions, government documents, documents relating to money laundering, press releases, and First Republic servicing agreements.  (*See generally* Appellant's Appendix FRE 201 ("App. FRE"), No. 13-CV-2356, Doc. 9, Nos. 90-174.)  I decline to take judicial notice of these documents.  First, although a district court has discretion to "permit supplementation of the record, if the objected material *is relevant*" to the bankruptcy court's decision, *see Wilson v. Creditors' Comms. of Commodore Int'l Ltd.* (*In re Commodore Bus. Machines*), 246 B.R. 476, 489 (S.D.N.Y. 2000) (emphasis added), the documents submitted do not relate to the issues raised in the proceedings below.

Further, even if these were documents were properly before me on appeal, many of the "facts" contained in these documents are not the kind that fall within Federal Rule of Evidence 201.  *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")  Moreover, as Wells Fargo concedes, (*see* Declaration of Andrew B. Helfand ("Helfand Decl."), (No. 13-CV-2356, Doc. 11), ¶ 4), I may only take judicial notice of almost all of these documents for the fact that they exist, but not for the truth of the matters asserted therein.  *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.") (internal quotation marks omitted); *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008) ("Judicial notice can be taken of prior complaints and legal proceedings, press releases and news articles and published analyst reports in determining what the market knew.").  If these documents are relevant, however, it is only for their truth, not the fact of their existence.

("First Republic") (the "FRB Note") in the sum of $1,400,000 plus interest, as well as a mortgage (the "FRB Mortgage"), which secured their obligations under the FRB note. (FRB Mem. 3.)[3]  The FRB Mortgage, which was recorded on May 13, 2003, gave First Republic a first priority mortgage on the Debtors' Millbrook, New York property (the "Millbrook Property"). (*Id.*)

Using the same Millbrook Property as collateral, on December 14, 2005, the Debtors obtained a mortgage loan from Wells Fargo, which was recorded on March 16, 2006, and another on January 19, 2007, which was recorded on February 9, 2007. (*Id.*)

On November 2, 2007, the Debtors filed a joint petition for relief under Chapter 11 of the United States Bankruptcy Code. (*Id.* at 4.)  On April 17, 2008, the bankruptcy case was converted to Chapter 7, and on April 18, 2008, the Bankruptcy Court appointed a Chapter 7 trustee (the "Trustee"). (*Id.*)  On October 31, 2008, a meeting of creditors was held pursuant to 11 U.S.C. § 341; the Debtors, Debtors' counsel, the Trustee, and counsel for First Republic attended. (WF Mem. ¶ 28.)  At this meeting, the Trustee examined Ms. Salander and showed her several First Republic documents bearing a signature purporting to be Ms. Salander's – apparently none relating directly to the FRB Mortgage on the Millbrook Property, but several relating to other loans from First Republic – which she denied signing. (*Id.* ¶¶ 29-32.)

B.  *Settlement Agreement*

First Republic filed a proof of claim against the Debtors in the amount of $46,067,000, arising from the Millbrook Property mortgage and myriad other instruments, and asserting a security interest in all the personal property and assets owned by the Debtors and several of their businesses, as well as the Millbrook Property and real property located in Manhattan. (FRB

---

[3] "FRB Mem." refers to the Answering Brief of Appellee First Republic Bank. (No. 13-CV-2356, Doc. 13.)  For convenience, I cite largely to the FRB Mem. rather than the underlying documents to support these undisputed background facts.

Mem. 4.)  After extensive negotiations, however, the parties settled, and on October 21, 2009,

the Bankruptcy Court entered an order ("Settlement Order") approving the settlement agreement

(the "Settlement Agreement") between First Republic and the Trustee of the Debtors' estate.

(WF Mem. ¶ 42.)  Although Wells Fargo had filed an objection to the Motion to Approve the

Settlement Agreement in which it argued that there was insufficient disclosure, (*see id.* ¶¶ 36-

37), that objection was withdrawn prior to issuance of the Settlement Order, (*id.* ¶ 36; FRB

Mem. 5).

As part of the Settlement Agreement, First Republic agreed to reduce its claim and

narrow the scope of its security interests in the estate's property.  (FRB Mem. 5.)  In exchange,

the Trustee, on behalf of the Debtors, released any and all claims against First Republic "arising

from or related to the Estate."  (*Id.*)  In particular, the Settlement Agreement:

> Resolve[d] all claims, demands and causes of action that may be or have been
> asserted, directly or indirectly, against First Republic by the [Debtors], the Trustee
> and the Estate . . . and releases, discharges and acquits First Republic . . . from
> any and all claims . . . of any kind, character, or nature whatsoever whether
> known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or
> contingent, . . . in law, at equity, whether for tort, fraud, contract, violations of
> federal or state securities laws or otherwise . . . .

(App. Ex. A, at 145-46.)[4]  Neither the Debtors nor Wells Fargo appealed the Settlement Order.

(FRB Mem. 5.)

C.  *Enforcement of the Settlement Agreement*

On December 13, 2010 – after the Settlement Order was entered and the Trustee

abandoned the Millbrook Property – First Republic initiated foreclosure proceedings.  (*Id.*)  On

February 7, 2011, Ms. Salander filed a verified answer with cross-claims and counterclaims

---

[4] "App. Ex. A" refers to Appellant's Appendix Exhibit A, which includes three separate volumes.  (No. 13-CV-
2356, Doc. 9, Nos. 2-89.)

alleging that the documents underlying First Republic's lien and mortgage on the Millbrook Property were fraudulent and thus that the FRB Mortgage was void *ab initio*. (*Id.*)

First Republic subsequently brought a motion before the Bankruptcy Court asking the Court to enforce the Settlement Order by precluding such claims, which it argued had been property of the estate and released by the Settlement Agreement. (*Id.* at 6.) Both Ms. Salander and Wells Fargo opposed First Republic's motion, and Wells Fargo cross-moved to, among other things, vacate or modify the Settlement Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (*Id.*)

On April 14, 2011, the Bankruptcy Court issued an Order (the "2011 Order") concluding that Ms. Salander's fraud claims were property of the Estate and were settled by the Trustee. (*Id.*) The Bankruptcy Court accordingly determined that those claims and defenses no longer existed and Ms. Salander could not raise them in the foreclosure proceedings. (*Id.*) With respect to Wells Fargo, the Bankruptcy Court found that Wells Fargo could have attended the October 31, 2008 meeting of creditors or investigated the Debtors itself, but chose not to do so, or to pursue any objection to the Settlement Order. (*Id.* at 7.) Concluding that the Trustee used his business judgment to settle Ms. Salander's forgery claims, the Bankruptcy Court determined that the Settlement Agreement was enforceable against the Debtors and accordingly granted First Republic's motion to enforce. (*Id.* at 6-7.) Wells Fargo did not appeal. (*Id*. at 7.)

D.  *Foreclosure Action*

Pursuant to the 2011 Order, Ms. Salander filed an amended answer in the Foreclosure Action, which withdrew her counterclaims and affirmative defenses. (*Id.*) First Republic subsequently filed for Summary Judgment. (*Id.*)

On March 23, 2012, Wells Fargo, which had not timely answered First Republic's Complaint in the Foreclosure Action, filed a cross-motion to compel First Republic to accept its Answer and Counterclaims.  (*Id.*)  Wells Fargo sought, among other things, to:  (1) equitably subordinate the FRB Mortgage to Wells Fargo's mortgages; (2) obtain priority over First Republic under N.Y. Real Property Law § 291; and (3) recover damages for First Republic's alleged unjust enrichment.  (App. Ex. A, at 16-19.)  Wells Fargo's counterclaims were based on Ms. Salander's fraud and forgery claims.  (FRB Mem. 8.)  Ms. Salander subsequently filed a Memorandum of Law in Opposition to First Republic's summary judgment motion, in which she again raised the fraud claims contained in her original answer and counterclaims.  (*Id.*)  On April 9, 2012, First Republic's counsel sent a letter to Wells Fargo and Ms. Salander requesting that they withdraw their opposition and warning them that First Republic would bring the matter to the Bankruptcy Court's attention if they were not withdrawn.  (*Id.*)

E.  *Consent Order and 2012 Memorandum Decision and Order*

In response, on April 19, 2012, Ms. Salander filed a motion before the Bankruptcy Court seeking a declaration that her conduct in the foreclosure action did not violate the 2011 Order and clarification as to the effect of the 2011 Order on the rights of Wells Fargo.  (*Id.*)  Shortly thereafter, Wells Fargo filed a "Protective Response" arguing that its state court pleadings did not violate either the 2011 Order or the Settlement Order.  (*Id.* at 9.)  The same day, First Republic filed a cross-motion for an order holding Ms. Salander in contempt and a motion to compel Wells Fargo to comply with the 2011 Order.  (*Id.*)

At a hearing held on May 15, 2012, the Bankruptcy Court found Ms. Salander in contempt of its 2011 Order.  (App. Ex. A., at 560-62.)  First Republic and counsel for Ms. Salander subsequently negotiated an order allowing Ms. Salander to purge the contempt finding.

(FRB Mem. 9.)  The negotiations resulted in the Consent Order, which the Bankruptcy Court entered on May 24, 2014.  (App. Ex. A, at 476-80.)  The Consent Order, among other things, (1) barred Ms. Salander from commencing or continuing any claims against First Republic related to its mortgage on the Millbrook Property, (*id.* at 477-78), (2) stipulated that the FRB Mortgage was valid and enforceable, (*id.* at 478), and (3) ratified the FRB Mortgage, (*id.*).

On June 8, 2012, the Bankruptcy Court issued a Memorandum Decision addressing First Republic's motion to compel Wells Fargo to comply with the 2011 Order.  (*Id.* at 502-516.)  The Bankruptcy Court found that Wells Fargo was precluded from asserting any derivative claims against First Republic – *i.e.*, Ms. Salander's forgery claim or any other estate claims – in the foreclosure proceedings.[5]  (*Id.* at 502.)  It concluded, however, that if the state court determined that Wells Fargo had any direct claims against First Republic – *i.e.*, claims on which it could prevail without showing injury to Ms. Salander – Wells Fargo was entitled to assert those claims in the Foreclosure Action.[6]  (*Id.* at 514-15.)  The Bankruptcy Court issued an Order on June 15, 2012 (the "2012 Order") consistent with its June 8 Memorandum Decision.  (*Id.* at 517-18.)

*F.  Termination of Foreclosure Action*

On January 14, 2013, the state court granted First Republic's Motion for Summary Judgment in the Foreclosure Action and denied Wells Fargo's cross-motion to compel First Republic to accept its untimely answer.  (FRB Mem. 11.)  In denying Wells Fargo's cross-motion, the court found that even if its answer had been timely, Wells Fargo's counterclaims and

---

[5] "[W]hen a creditor seeks relief against third parties that pushed the debtor into bankruptcy, the creditor is asserting a derivative claim that arises from the harm done to the estate."  *In re Barnard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 70 (2d Cir. 2013).

[6] A claim is "direct" if it is one on which a creditor can prevail without showing injury to the Debtor, *see Druck Corp. v. Macro Fund Ltd.*, 290 F. App'x 441, 443 (2d Cir. 2008) (summary order), or in other words, a claim "which only the creditor himself can enforce," *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d at 71.

defenses based on the forgery and fraud claims were barred by *res judicata* and that its remaining affirmative defenses lacked merit.  (*Id.*)

*     *     *

Wells Fargo now appeals from the Consent Order and 2012 Memorandum Decision and Order, primarily arguing that:  the *in pari delicto* doctrine – here based on First Republic's alleged participation in a fraud scheme perpetrated by Lawrence Salander – prevented any pre-petition claims against First Republic from passing to the estate; therefore the Trustee (who stood in the shoes of the Debtors) was barred from settling Ms. Salander's forgery claim against First Republic; and thus the fraud and forgery defenses and counterclaims Wells Fargo wished to assert against First Republic in the Foreclosure Action should have been available to it.  (WF Mem. ¶ 1.)

## II.  Discussion

### A.  Legal Standard

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*.  *Overbaugh v. Household Bank N.A.* (*In re Overbaugh*), 559 F.3d 125, 129 (2d Cir. 2009) (per curiam); *see* Fed. R. Bankr. P. 8013 (district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").  "Mixed questions of fact and law are subject to *de novo* review."  *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

B. *Analysis*

1. <u>Consent Order</u>

First Republic argues that Wells Fargo lacks standing to appeal the Bankruptcy Court's Consent Order.  (FRB Mem. 12-15.)  Specifically, First Republic argues that Wells Fargo has failed to allege that it suffered a direct injury as a result of the Order and asserts only injuries sustained by Ms. Salander.  (*Id.* at 14-15.)  Wells Fargo's response – which is somewhat oblique – argues that although the Settlement Agreement fixed First Republic's lien at $1,400,000, First Republic received approximately $1,800,000 in equity from the foreclosure, which caused Wells Fargo to suffer a pecuniary loss.[7]  (WF Reply Mem. ¶ 2.)[8]  It also argues that the Consent Order "gags" Ms. Salander, which prejudices Wells Fargo in proving, as part of the Foreclosure Action, that the FRB Mortgage is void.  (*Id.*)

Standing is a threshold question in every federal case that determines the power of the court to hear the suit.  *See Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001); *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387-88 (2d Cir. 1997).  In addition to the requirements imposed by Article III, an appellant in a bankruptcy case must be "a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court."  *Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 468 B.R. 603, 612 (S.D.N.Y. 2012) (internal quotation marks omitted) ("The 'aggrieved person' standard requires that an appellant show both 'injury in fact' under Article III, and that the injury suffered is direct and financial.").  The "aggrieved person" standard for bankruptcy standing "reflects the understandable concern that if appellate standing is not limited, bankruptcy litigation will

---

[7] Wells Fargo does not allege, however, what accounts for the discrepancy or that First Republic was not entitled to it.

[8] "WF Reply Mem." refers to Appellant's Combined Reply Briefs.  (No. 13-CV-2356, Doc. 14.)

become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order." *Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 273 (2d Cir. 1997) (internal quotation marks and alteration omitted); *see In re Gucci*, 126 F.3d at 388 ("The stringency of [the 'aggrieved person' standard] is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters."). As the "aggrieved person" standard is more stringent than the constitutional requirements, *In re Johns-Manville Corp.*, 340 B.R. 49, 56 (S.D.N.Y. 2006), *vacated on other grounds*, 517 F.3d 52 (2d Cir. 2008); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214-15 (3d Cir. 2004), Wells Fargo cannot proceed with this appeal if it cannot demonstrate that it suffered a direct financial injury as a result of the Consent Order.

To explain how it has been harmed financially from the Consent Order, Wells Fargo alleges only that First Republic received more money in foreclosure than its lien was worth, and that the "gag" on Ms. Salander hampers it in the Foreclosure Action.[9] (WF Reply Mem. ¶ 2.) Yet Wells Fargo fails to make any connection between the Consent Order and pecuniary harm to itself. Wells Fargo's chain of events asserts that the Consent Order "ratified" the FRB Mortgage, which in turn fixed First Republic's commercial lien, converted Wells Fargo's equity, and prohibited Ms. Salander from contesting the validity of FRB's lien. (*Id.* ¶ 6.) In the same sentence, however, Wells Fargo acknowledges that the Consent Order did not prohibit *Wells Fargo* from contesting the lien. (*See id.* ("The Consent Decree thus . . . 'gags'[] LLC member Julie against First Republic – not [Wells Fargo] – leaving [Wells Fargo's] liens at risk.").) Indeed, at the May 15 hearing, Wells Fargo asserted numerous times that Wells Fargo's claims

---

[9] Wells Fargo also appears to argue that the Consent Order and 2012 Memorandum Decision and Order "nullif[ied] rights Wells preserved." (WF Mem. ¶¶ 112-19.) This argument seems to concern the *in pari delicto* doctrine, the effect of which on Ms. Salander's forgery claim – or lack thereof – will be addressed below.

against First Republic were not derivative of the Debtors, but were direct claims belonging to Wells Fargo itself.  (*See, e.g.*, App. Ex. A, at 538-39, 540, 549, 551.)  Wells Fargo continues to assert same in its papers here.  (*See* WF Mem. ¶ 84 ("Wells' state court counterclaims and defenses are not derivative of the Debtor's Estate – they are Wells' own claims – against First Republic and remain fully viable.").)  If, as Wells Fargo argued, its priority in the Millbrook Property was not affected by the Settlement Agreement, (*see* App. Ex. A, at 551 ("[Court:]  So, all you've said and what you're just saying to me . . . is that your priority is not affected by this settlement.  [Wells Fargo:]  Correct.  [Court:]  And that's all you're arguing?  [Wells Fargo:]  Correct, Your Honor.  And that the claims are not derivative, the claims are unique to Wells.")), then the Consent Order "ratifying" the Settlement Agreement did not cause the direct financial injury required to convey standing to Wells Fargo to challenge the Consent Order.  In short, if Wells Fargo's claims against First Republic are direct claims rather than derivative claims of Ms. Salander, then Wells Fargo could not have been directly injured by Ms. Salander agreeing to release her fraud claims against First Republic.  Indeed, nothing in the Consent Order mentions Wells Fargo or purports to adjudicate its rights.[10]  Any impairment of Wells Fargo's ability to prevail over First Republic in the Foreclosure Action is exactly the sort of indirect effect that the "aggrieved person" standard prohibits.  *See In re Gucci*, 126 F.3d at 388.

---

[10] The Bankruptcy Court made clear that it issued the Consent Order solely to address First Republic's Motion with respect to Ms. Salander.  Despite the fact that First Republic sought clarification from the Bankruptcy Court with respect to both Ms. Salander's and Wells Fargo's ability to raise the forgery claims in state court, the Bankruptcy Court chose to address the parties' respective rights in two separate Orders.  The Bankruptcy Court acknowledged in the 2012 Memorandum Decision and Order that although it had found the Debtor in contempt at the May 15, 2012 hearing, it had "reserved decision as to whether Wells Fargo could assert claims against First Republic in the Foreclosure Action."  (App. Ex. A., at 506.)  The 2012 Memorandum Decision and Order, which were issued to address Wells Fargo's rights, is what gives Wells Fargo standing to appeal.

Because Wells Fargo cannot demonstrate a direct financial injury from the Bankruptcy Court's Consent Order, it lacks standing to appeal the decision.[11]

2.   2012 Memorandum Decision and Order

Wells Fargo appeals the Bankruptcy Court's June 2012 Memorandum Decision and Order on several grounds, although the gravamen of Wells Fargo's complaint is that the *in pari delicto* doctrine and the *Wagoner* rule precluded the Trustee from settling Ms. Salander's forgery claim.  Wells Fargo argues that because First Republic engaged in wrongdoing, Ms. Salander's fraud/forgery claim against First Republic did not pass to the estate and therefore the Trustee had no standing to settle the claim on the Debtor's behalf.  (WF Mem. ¶¶ 67-82.)  As a result, Wells Fargo argues, the Settlement Agreement is void, Wells Fargo should be free to assert any claims or defenses that are derivative of Ms. Salander, and the Bankruptcy Court orders precluding Wells Fargo from asserting such counterclaims and affirmative defenses in state court are not entitled to any weight, much less *res judicata* effect.  (*Id.* ¶ 69.)

Although the *in pari delicto* doctrine is a state-law affirmative equitable defense that does not raise a standing issue, *see Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 692 (Bankr. S.D.N.Y. 2008), federal courts have established a closely-related standing rule – the *Wagoner* rule – denying plaintiffs standing to bring certain claims in federal court in cases where the *in pari delicto* defense is implicated, *see id.* at 692-93.  Because the *in pari delicto* defense and the *Wagoner* rule are closely intertwined, I will address them together.

By arguing that the Trustee lacked standing to settle the forgery claim and thus the Bankruptcy Court lacked jurisdiction, Wells Fargo is essentially seeking to appeal the Bankruptcy Court's Settlement Order and 2011 Order (enforcing the Settlement Agreement),

---

[11] Even if Wells Fargo did have standing to appeal the Consent Order, I would affirm it for substantially the same reasons that I affirm the 2012 Memorandum Decision and Order, discussed below.

despite the fact that the current appeal deals only with the 2012 Memorandum Decision and

Order.  Under the Bankruptcy Code, a party has fourteen days after the date of entry of the order

to file a notice of appeal.  Fed. R. Bankr. P. 8002(a).  Although Wells Fargo had the opportunity

to appeal both the Settlement Order and 2011 Order, it chose not to, and it may not circumvent

the rules by raising these issues in the current appeal.[12]  Further, Wells Fargo did not raise the

issue of standing or the *in pari delicto* doctrine in the proceedings below, and thus these

arguments were waived.  *See Merchants Bank v. Goodyear*, 228 B.R. 87, 88 (D. Vt. 1997)

(issues not raised in bankruptcy court cannot be raised in first instance on appeal).[13]  Finally, as

---

[12] Wells Fargo argues that its failure to appeal the Settlement Order is irrelevant and its objections to standing are not waived, because standing goes to the court's jurisdiction to hear the case and thus may be raised at any point in the proceedings.  (WF Mem. ¶ 80.)  In support of its position, Wells Fargo cites, among other cases, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 67 (1997), for the proposition that standing may be raised at any time because it is necessary for there to be a case or controversy over which the federal court has jurisdiction.  Although that is true where a party asserts a lack of constitutional standing, *see Crown Cork & Seal Co., Master Retirement Trust v. Credit Suisse First Boston Corp.*, No. 12-CV-5803, 2013 WL 491538, at *1 (S.D.N.Y. Feb. 8, 2013), Wells Fargo is not – as far as I can tell – asserting that the Trustee lacked standing under Article III.  Further, neither the *Wagoner* rule nor the *in pari delicto* doctrine apply to a trustee's statutory standing under Section 544 of the Bankruptcy Code, *see Geltzer v. Mooney* (*In re MacMenamin's Grill Ltd.*), 450 B.R. 414, 431 (Bankr. S.D.N.Y. 2011), and even if they did, statutory standing arguments may be waived, *see Mhany Mgmt. Inc. v. Inc. Vill. of Garden City*, No. 05-CV-2301, 2013 WL 6334107, at *16 (E.D.N.Y. Dec. 6, 2013).  Further, while Wells Fargo could arguably have raised the Trustee's lack of standing at any time while the propriety of the Settlement Agreement was being litigated, allowing it to raise that issue now, in connection with different litigation, would wholly undermine orderly appellate processes by essentially permitting unappealed matters to be indirectly appealed any time through a related litigation.

Wells Fargo further attempts to untimely appeal the Settlement Order and 2011 Order in arguing that the 2012 Memorandum Decision and Order could not "ratify" First Republic's lien because Ms. Salander's forged signatures rendered the lien void and unable to be ratified.  (WF Mem. ¶¶ 122-26.)  Additionally, Wells Fargo asserts that even if forged signatures could be ratified, Ms. Salander was not aware of the forgeries until after the Trustee abandoned the property and thus the Settlement Agreement could not have settled her forgery claim and the 2012 Memorandum Decision and Order could not have ratified it.  (*Id.* ¶¶ 127-34.)

Any objections to the Settlement Agreement should have been raised at the time the agreement was entered into or at the time the Bankruptcy Court issued the Settlement Order.  Although Wells Fargo argues that it was not aware of the alleged forgeries at the time the Settlement Agreement was entered into, the Bankruptcy Court found –and I agree – that Wells Fargo could have learned of the alleged forgeries had it been a more diligent creditor.  (App. Ex. A, at 509-10.)  In any event, the Settlement Agreement "[r]esolv[ed] all claims . . . that may be or have been asserted . . . against First Republic by the [Debtors], the Trustee and the Estate . . . *whether known or unknown*," (*id.* at 145), and thus the Settlement Agreement could have settled Ms. Salander's forgery claim even if she did not learn of its existence until after the property was abandoned.

[13] Although generally issues that were not raised before the bankruptcy court may not be raised on appeal, "'arguments made on appeal need not be identical to those made below if they involve only questions of law and additional findings of fact are not required.'"  *Merchants Bank*, 228 B.R. at 88 (alteration omitted) (quoting *U.S. Lines (S.A.), Inc. v. United States* (*In re McLean Indus., Inc.*), 30 F.3d 385, 387 (2d Cir. 1994)).  To the extent that

discussed earlier, the documents on which Wells Fargo relies to establish wrongdoing on First Republic's part for purposes of the *in pari delicto* defense are not properly considered on this appeal.  *See* Note 2 above.

In any event, neither the *Wagoner* rule nor the *in pari delicto* doctrine bar Ms. Salander's forgery claim from accruing to her estate.  Under the *Wagoner* rule, "a claim against a third party for defrauding a [debtor] with the cooperation of [the debtor] accrues to creditors, not to the guilty [debtor]."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (alteration and internal quotation marks omitted).  Because the trustee stands in the shoes of the debtor, "the *Wagoner* rule bars a trustee from suing to recover for a wrong that he himself essentially took part in."  *Id.* at 87.  Therefore, Wells Fargo argues, Ms. Salander's claims for forgery could not have accrued to her estate because First Republic engaged in wrongdoing.  Yet that argument ignores the fact that Wells Fargo does not claim that *Ms. Salander* engaged in any misconduct.[14]

---

Wells Fargo's *Wagoner* argument could be construed as one that Wells Fargo's forgery claims are direct claims as opposed to the estate's – and that would be a stretch – that argument will be addressed below.

[14] Wells Fargo states generally that "Salander" engaged in wrongdoing that would preclude the Trustee from settling the Debtor's claims.  (*See* WF Mem. ¶¶ 75, 92 ("[T]he Bankruptcy court erred because given First Republic's and Salander's *in pari delicto* wrongdoing, those state law claims *never* become [*sic*] part of the Bankruptcy estate.").)  Section 302 of the Bankruptcy Code allows spouses to file jointly; it does not, however, guarantee that their estates will be consolidated.  *See* 11 U.S.C. § 302(b) ("After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.").  Thus, even when a joint petition is filed, "two separate bankruptcy estates – the husband's and the wife's – are created."  *Wornick v. Gaffney*, 544 F.3d 486, 492 (2d Cir. 2008); *see In re Arnold*, 33 B.R. 765, 767 (Bankr. E.D.N.Y. 1983) ("Although a joint petition is filed, estates are in legal effect separate or several.  Section 302 has procedural effect only.  Although a husband and wife file a joint petition, there are in fact two separate debtors.")  Wells Fargo does not contend that the Bankruptcy Court ever issued an order consolidating the Salanders' estates, and therefore for present purposes the Trustee stood only in the shoes of Ms. Salander, who is not accused of engaging in any wrongdoing that would have barred the Trustee from settling her claims.

In its reply, Wells Fargo contends that because both Debtors were members of Mr. Salander's Limited Liability Company ("LLC"), Mr. Salander's wrongdoing should be imputed to Ms. Salander.  (WF Reply ¶ 9.)  Wells Fargo provides a quote but no cite to support this position.  The quote appears to come from *JMM Props., LLC v. Erie Ins. Co.*, No. 08-CV-1382, 2013 WL 149457, at *6 (N.D.N.Y. Jan. 14, 2013), which addressed whether, under New York law, the criminal actions of a managing member may be imputed to an LLC.  Because the New York Limited Liability Corporation Law was silent as to this issue, the district court looked to common law and answered the inquiry in the affirmative, based on the corporation-partnership hybrid nature of the LLC.  *JMM Properties*, 2013 WL 149457, at *6.  That case might help Wells Fargo impute Mr. Salander's wrongdoing to an LLC, but not to other individual shareholders of that LLC.  Further, the mortgage at issue here is that of Mr. and Ms. Salander as husband and wife, not as partners in an LLC, and Wells Fargo cites no case law – nor has this Court found any – that

There is no wrongdoing on the part of the debtor that would bar the Trustee from resolving the estate's forgery claims under the *Wagoner* rule, which requires the debtor and third party to act in cahoots.

Wells Fargo further contends that the Bankruptcy Court erred in concluding that Ms. Salander's forgery claim passed to her estate because the *in pari delicto* doctrine bars this result. (WF Mem. ¶¶ 77-78.)  For the same reason discussed above, however, the doctrine of *in pari delicto* is inapplicable.  The *in pari delicto* doctrine prevents a party from suing others for a wrong in which the party itself participated.  Thus, if the debtor engaged in wrongdoing, the trustee, who "stands in the [debtor's] shoes," *Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co.* (*In re Ionosphere Clubs, Inc.*), 156 B.R. 414, 436 (S.D.N.Y. 1993), may be precluded from bringing on behalf of the debtor's estate claims related to that wrongdoing.  As stated above, Wells Fargo does not contend that Ms. Salander is guilty of any misconduct that could be imputed to the Trustee.

Despite the length of its opening brief, the only argument Wells Fargo proffers as to why Ms. Salander's forgery claim against First Republic was not property of the bankruptcy estate is that the *in pari delicto* doctrine precludes this result.  (*See* WF Mem. ¶¶ 77-78, 90-92, 110, 112-13.)  I find no merit in that contention, and thus it is unnecessary to review the Bankruptcy Court's determination on other grounds.  But in any event, I agree with Judge Morris' reasoning as to why Ms. Salander's forgery claim was property of the estate and thus capable of being settled by the Trustee.  (App. Ex. A, at 506-10.)

---

extends *JMM Properties'* holding either to the bankruptcy context or to married couples.  And of course, there is nothing properly in the record supporting the notion that Ms. Salander and First Republic engaged in joint wrongdoing.

Accordingly, the Bankruptcy Court's determination that Wells Fargo was precluded from asserting Ms. Salander's forgery claim (or any claim belonging to the estate, for that matter) in the Foreclosure Action is affirmed.[15]

## III.  CONCLUSION

For the reasons stated above, the appeal in No. 13-CV-2356 is DISMISSED and the Bankruptcy Court's Order in 13-CV-2357 is AFFIRMED.  The Clerk of Court is respectfully directed to terminate the pending appeals.  (Nos. 13-CV-2356, 13-CV-2357.)

**SO ORDERED.**

Dated: December 27, 2014
    White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[15] The Bankruptcy Court further held that Wells Fargo was entitled to assert any direct causes of action against First Republic.  Because state law governs whether a claim is direct or derivative, the Bankruptcy Court concluded that the state court – in which the Foreclosure Action was already proceeding – would be in the best position to address that question.  If Wells Fargo is arguing that the Bankruptcy Court precluded Wells Fargo from asserting its own forgery claims against First Republic, (*see* WF Mem. ¶ 84 ("Wells' state court claims and defenses and ability to contest the Millbrook forgeries in the state court foreclosure were not 'ratified' and 'settled' by the [Settlement Agreement] because Wells was not a party to the [Settlement Agreement], Wells received no benefit from it, and Wells' state court counterclaims and defenses are not derivative of the Debtor's Estate – they are Wells' own claims – against First Republic and remain fully viable.") (internal citations omitted)), it is mischaracterizing the Bankruptcy Court's decision, which plainly allowed Wells Fargo to assert its own claims.  It was the state court – not the Bankruptcy Court – that concluded that Wells Fargo's claims were either barred by *res judicata* or meritless and therefore could not be asserted in the Foreclosure Action.  To the extent that Wells Fargo is arguing that *res judicata* does not bar its ability to bring its direct claims, (*see id.* ¶¶ 94-98), it is impermissibly attempting to appeal a state court decision, *see Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137 (E.D.N.Y. 2006) ("*Rooker-Feldman* establishes the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.").